38 F.3d 609
 309 U.S.App.D.C. 34
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
NATIONAL LABOR RELATIONS BOARD, Petitioner
v.
DUBUQUE PACKING COMPANY, INC.; BeefAmerica, Inc.;
BeefAmerica Operating Company, Inc., Respondents,
United Food and Commercial Workers, AFL-CIO, Intervenor.
 No. 94-1477.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 27, 1994.
 
 NLRB [APPEALING AFTER REMAND FROM 1 F.3d 24].
 ORDER DISCHARGED.
 Before: Wald, Henderson and Randolph, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 Upon consideration of the settlement stipulation dated May 18, 1994; the National Labor Relations Board's decision and order dated June 3, 1994; the Board's application for enforcement of that order; the "Judgment" appended to the application for enforcement; and the court's order to show cause filed August 3, 1994, and the lack of response thereto, it is
 
 
 2
 ORDERED that the order to show cause be discharged. It is
 
 
 3
 FURTHER ORDERED that the application for enforcement be granted. The Clerk is directed to enter the "Judgment" appended to the application.
 
 
 4
 The Clerk is directed to issue forthwith a certified copy of this order to the petitioner in lieu of formal mandate.
 
 ATTACHMENT
 UNITED STATES COURT OF APPEALS
 FOR THE DISTRICT OF COLUMBIA CIRCUIT
 
 5
 National Labor Relations Board, Petitioner,
 
 
 6
 v.
 
 
 7
 Dubuque Packing Company, Inc., Beefamerica, Inc. and
 
 
 8
 Beef-America Operating Company, Inc., Respondent(s).
 
 
 9
 Filed Sept. 27, 1994.
 
 JUDGMENT
 
 10
 THIS CAUSE was submitted upon the application of the National Labor Relations Board for the enforcement of a certain order issued by it against Respondent, Dubuque Packing Company, Inc., BeefAmerica, Inc. and BeefAmerica Operating Company, Inc., its officers, agents, successors, and assigns, on June 3, 1994, in a proceeding before the said Board numbered 33-CA-5524 and 33-CA-5588; upon the transcript of the record in said proceeding, certified and filed in this Court enforcing the order.
 
 
 11
 ON CONSIDERATION WHEREOF, it is ordered and adjudged by the United States Court of Appeals for the District of Columbia Circuit that the said order of the National Labor Relations Board be, and the same is hereby enforced; and that the Respondent, Dubuque Packing Company, Inc., BeefAmerica, Inc. and BeefAmerica Operating Company, Inc., its officers, agents, successors, and assigns, shall:
 
 A. Cease and desist from:
 
 12
 (1) failing and refusing to bargain collectively with the Union as the exclusive representative of its employees in the unit, about decisions entailing mandatory subjects of bargaining.
 
 
 13
 (2) Reducing the Union's negotiating opportunities by establishing ultimatum-backed deadlines by which time the Union either must accept Respondent's proposed mid-term contract concessions or face partial shut-downs and large scale job losses.
 
 
 14
 (3) Refusing to provide the Union with certain financial data requested for bargaining purposes by:
 
 
 15
 (a) Limiting the scope of the financial information furnished to the Union only to the Dubuque plant instead of providing the Respondent-wide data requested.
 
 
 16
 (b) Insisting that the Union accept certain mid-term contract modifications before any financial information would be released.
 
 
 17
 (c) Preventing free and confidential interchange between the Union and its retained accountants by threatening to sue such accountants if they issued a report to the Union that had not been approved by the Respondent.
 
 
 18
 (4) Repudiating a written agreement to not seek further mid-term modifications during the term of the collective bargaining agreement if certain conditions were met, which promise had been made by the Respondent in exchange for a valuable earlier contract concession by the Union.
 
 
 19
 (5) Implementing certain mid-term contract modifications unilaterally without having reached bargaining impasse or having obtained the Union's agreement.
 
 
 20
 (6) Exacting from the Union and implementing a written agreement calling for mid-term contract concessions in the form of wage and other benefit reductions, which agreement had been obtained by unlawful bargaining tactics.
 
 
 21
 B. Take the following affirmative action necessary to effectuate the policies of the Act:
 
 
 22
 (1) Make whole employees who suffered loss of pay by reason of the Respondent's unfair labor practices in unilaterally implementing mid-term modifications to the collective bargaining agreement (the discriminatees), by payments, made payable to the National Labor Relations Board, of amounts and at the times set forth in Appendix 1 to this document. The payments shall be held in escrow by the Board until distributed to the discriminatees. The determination of the amounts each discriminatee is to receive is to be determined by the Regional Director or his designated agent and paid after the payments are received by the Board according to the schedule set forth in Appendix 1. In consideration of timely payment of all but the good faith penalty payment in accordance with Appendix 1, plus interest, payment of the good faith penalty payment is hereby waived; but if any installment other than the good faith penalty payment is not paid on or before the date due, the full unpaid amount shall become immediately due and payable and the Board may, without further notice, institute proceedings against the Respondent for the collection of the full indebtedness remaining due, with additional interest due on the entire unpaid balance from the date of default until full payment is received, computed in accordance with the formula set forth in New Horizons for the Retarded, Inc., 283 NLRB 1173 (1987). Upon receipt of final payment, the Board shall issue a letter of compliance releasing the Respondent from any future monetary remedial obligation in these cases.
 
 
 23
 The payment to each individual discriminatee of backpay and interest shall be determined according to the amounts of pay lost as a result of the Respondent's implementation of mid-term modifications to the collective bargaining agreement. Each discriminatee's payment shall constitute backpay and interest. For purposes of computing the amounts to be withheld from the payment for taxes, FICA and Medicare, the amount allocated as backpay shall be 28% of the discriminatee's payment and interest shall be 72% of the payment. The Respondent's share of the FICA and Medicare amounts is included in and shall be deducted by the Board from the gross backpay portion of the payment and forwarded to the Internal Revenue Service along with the discriminatees' share of FICA, Medicare and deductions for taxes.
 
 
 24
 (3) Copies of the Notice to Employees attached hereto and marked "Appendix 2", shall be provided by the Regional Director to the Respondent for signature by the Respondent's authorized representative and returned to the Regional Director for mailing to the discriminatees.
 
 
 25
 (4) Notify the Regional Director, in writing, within 20 days from the date of this Judgment what steps the Respondent has taken to comply.
 
 
 26
 Mandate shall issue forthwith.
 
 
 27
 ________________________________
 
 Judge, United States Court of
 Appeals for the District of
 Columbia Circuit
 
 28
 ________________________________
 
 Judge, United States Court of
 Appeals for the District of
 Columbia Circuit
 
 29
 ________________________________
 
 Judge, United States Court of
 Appeals for the District of
 Columbia Circuit
 APPENDIX 1
 
 30
 The Respondent shall pay $3,500,000 at 5% A.P.R. interest in six annual installments, according to the following payment schedule. If the Respondent fails to make timely payments in accordance with the payment schedule, the remaining unpaid balance plus interest to date and a $500,000 good faith penalty payment shall be immediately due and payable. If all payments are made according to the payment schedule, the $500,000 good faith penalty payment is waived.
 
 
 31
 In the event the Respondent is sold, the remaining unpaid balance plus interest to date and the $500,000 good faith penalty payment shall become due and payable on sale.
 
 
 32
 Payments are to be made payable to the National Labor Relations Board, for distribution to the individual discriminatees in amounts to be determined by the Regional Director, or his designated agent, in accordance with normal Board compliance procedures. The Respondent's share of the FICA and Medicare amounts is included and shall be deducted by the Board from the gross backpay portion of the payment and forwarded to the Internal Revenue Service along with the discriminatees' share of FICA, Medicare and deductions for taxes.
 
 
 33
 Due Date Principle Interest Total
May 15, 1995 $583,333 $175,000 $758,333
May 15, 1996 $583,333 $145,833 $729,167
May 15, 1997 $583,334 $116,667 $700,000
May 15, 1998 $583,333 $ 87,500 $670,833
May 15, 1999 $583,333 $ 58,333 $641,667
May 15, 2000 $583,334 $ 29,167 $612,500
Total $3,500,000 $612,500 $4,112,500
 
 APPENDIX 2
 NOTICE TO EMPLOYEES
 
 34
 POSTED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF
 
 
 35
 APPEALS ENFORCING AN ORDER OF THE NATIONAL LABOR
 
 RELATIONS BOARD
 An Agency of the United States Government
 
 36
 The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to mail and abide by this notice.
 
 
 37
 WE WILL NOT fail and refuse to bargain collectively with the United Food and Commercial Workers International Union, AFL-CIO, Local No. 150A (Union) as the exclusive representative of its employees in the following appropriate unit, about decisions entailing mandatory subjects of bargaining. The unit is:
 
 
 38
 All production employees employed by the Respondent at its Dubuque, Iowa plant.
 
 
 39
 WE WILL NOT reduce the Union's negotiating opportunities by establishing ultimatum-backed deadlines by which time the Union either must accept Respondent's proposed mid-term contract concessions or fact partial shut-downs and large scale job losses.
 
 
 40
 WE WILL NOT refuse to provide the Union with certain financial data requested for bargaining purposes by:
 
 
 41
 Limiting the scope of the financial information furnished to the Union only to the Dubuque plant instead of providing the Respondent-wide data requested.
 
 
 42
 Insisting that the Union accept certain mid-term contract modifications before any financial information would be released.
 
 
 43
 Preventing free and confidential interchange between the Union and its retained accountants by threatening to sue such accountants if they issued a report to the Union that had not been approved by the Respondent.
 
 
 44
 WE WILL NOT repudiate a written agreement to not seek further mid-term modifications during the term of the collective bargaining agreement if certain conditions were met, which promise had been made by the Respondent in exchange for a valuable earlier contract concession by the Union.
 
 
 45
 WE WILL NOT implement certain mid-term contract modifications unilaterally without having reached bargaining impasse or having obtained the Union's agreement.
 
 
 46
 WE WILL NOT exact from the Union and implement a written agreement calling for mid-term contract concessions in the form of wage and other benefit reductions, which agreement had been obtained by unlawful bargaining tactics.
 
 
 47
 WE WILL make whole employees who suffered loss of pay by reason of our unfair labor practices in unilaterally implementing mid-term modifications to the collective bargaining agreement.
 
 
 48
 DUBUQUE PACKING COMPANY, INC.
 
 
 49
 (Employer)
 
 Dated: __________________________
 By: ________________________________
 
 50
 (Representative) (Title)
 
 
 51
 THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE
 
 
 52
 This notice must remain posted for 60 consecutive days from the date of posting and must not be altered, defaced, or covered by any other material. Any questions concerning this notice or compliance with its provisions may be directed to the Board's Office, 300 Hamilton Boulevard, Suite 200, Peoria, IL 61602-1246. Telephone: (309) 671-7068.